**ARTYPE, INCORPORATED,**
Plaintiff,

v.

**Joseph ZAPPULLA, d/b/a Art-Type Service, Defendant.**

United States District Court,
S. D. New York.

Dec. 22, 1954.

Edmund F. Lamb, New York City, and I. Irving Silverman, Chicago, Ill., for plaintiff.

Rosario Ingargiola, Brooklyn, N. Y., for defendant.

MURPHY, District Judge.

In this action for trademark infringement and unfair competition, jurisdiction is predicated upon the diverse citizenship of plaintiff, an Illinois corporation, and defendant, a New York resident doing business within this judicial district together with allegations that more than $3,000 exclusive of costs is involved, as well as upon violations of the Act of July 5, 1946, 60 Stat. 427, 15 U.S. C.A. c. 22. Plaintiff seeks (1) adjudication of the validity of its registered mark "Artype", (2) injunction restraining defendant from using an imitative mark in connection with goods or services of the class involving "transparent self-adhering sheets having indicia thereon," and from unfairly competing with plaintiff, (3) destruction of colorable imitations of plaintiff's mark, and (4) costs. At trial plaintiff has waived damages.

The substance of the complaint is that defendant's doing business under the name "Art-Type Service" infringes

plaintiff's registered trademark "Artype" and constitutes unfair competition. Plaintiff makes a transparent acetate sheet containing some 800 different samples of letters of the alphabet, numbers and various symbols in different sizes and types. Plaintiff undertakes to offer virtually all possible forms of words, letters, diagrams and signs that might be used by an artist preparing an advertising layout. The artist using plaintiff's product cuts the desired letter or symbol from this transparent acetate sheet and pastes it to the layout he is preparing. This operation is facilitated by the adhesive quality of the back of the acetate sheet. When the layout is complete with such letters and symbols, and whatever original work the artist may add, it may then be photographed preparatory to photo-offset printing, electroplating, newspaper printing or other reproduction.

Plaintiff has many customers in New York City and throughout the country, principally ultimate consumers such as General Electric, Westinghouse and Remington-Rand who prepare their own layouts. In ordering plaintiff's merchandise some of these customers spell the name of plaintiff's product in a variety of ways, such as Artype or Arttype or Art Type.

Defendant, who sells no merchandise, has been supplying a service for the past five years under the business name Art-Type Service. With two typing machines, called Varitype, defendant is able to supply compositions in a variety of type and language suitable for various publications and ready for offset printing, photographic and other reproduction. Defendant's service competes primarily with more expensive linotype composition. These machines differ from ordinary typewriters in that their type is removable and may be varied by sizes from 6 to 12-point, and also by the fact that a right-hand margin may be produced with the same vertical precision as the left-hand one. Occasionally when letters and symbols are sought by customers that cannot be thus varityped, defendant pastes on the composition letters and symbols supplied by Fototype. Fototype, a competitor of plaintiff, sells in the open market similar merchandise, differing primarily in that its letters and symbols are printed on thick paper instead of transparent acetate, and are supplied in a pad instead of by sheets. Defendant conducts his business in a one-room office rented at $50 per month, has no assistants and has realized less than $2,000 a year including salary for himself, for the entire period in business under the Art-Type name.

There is no evidence in this case of any intent on defendant's part to pass off his services as originating with plaintiff. Indeed plaintiff is not listed in the usual directories in this area under its business name but rather sells its products in this locale through an exclusive distributor, Trans-Art, Inc. The only evidence of likelihood of confusion comes from the mouth of defendant himself who acknowledges an occasional telephone call from persons seeking plaintiff's products and finding no listing for plaintiff have consulted defendant. Defendant in every instance directed the inquirers to Trans-Art. As a matter of fact, defendant's varitype service has affixed no mark or name and could not be confused with plaintiff's product by any prospective customers. Indeed, plaintiff's business has increased in this area while defendant's volume has continued on a trivial plateau. There is no showing that among prospective purchasers of advertising and other layouts, the origin of defendant's service would probably be confused with that of plaintiff's merchandise.

In selecting Art-Type as a business name, defendant has denominated its service by an adjective that is certainly not arbitrary or distinctive, and appears more than merely suggestive. "Art" has a Webster dictionary definition as an adjective, "Designed to produce an artistic effect, or for decorative purposes; as, *art* pottery, *art* needlework, *art* china." [1]

1. New International Dictionary, (2d ed. Unabridged 1950) p. 155, col. 2.

This is the second definition, but the first one offered is substantially in accord. The second component of the name, "Type", is of course literally used. Applied to the composition of type in the service supplied by defendant, the term, "Art-Type", is not only descriptive but actually generic. The name not only indicates the functional characteristics of the service to be supplied, but indeed stakes out the nature or class of composition work that is to be performed.[2] Concededly, plaintiff has validly registered as a trademark the single word "Artype" with elision of one letter. Applied to the merchandise sold by plaintiff, the single word is no less descriptive and generic than the hyphenated compound used by defendant to denominate its service.

■■ Compounding the words, and dropping the letter "t",[3] does not render the word suggestive in the sense that "'the imaginativeness involved in the suggestion * * * is so remote and subtle that it is fanciful and not needed by other merchants of similar goods.'"[4] Since registration confers no substantive rights beyond common law ones but merely accords jurisdictional and procedural advantages to the registrant, we think the rule settled that such descriptive and generic term cannot be encircled and excised from the market place for the monopoly of the plaintiff.[5] Accordingly, the relief sought by plaintiff to have "Artype" adjudicated as a valid trademark must be denied.

■■ Apart from any proof of fraud, plaintiff might still prevail if it can establish acquisition of a trade name in the word "Artype." To do so, plaintiff has the burden of establishing special significance or secondary meaning through adoption and use of the designation in association with its goods.[6] To establish such trade name, "the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer."[7] "Whether or not a designation has acquired this special significance is a question of fact in each case."[8] As such question we find that plaintiff has not sustained its burden of proof in this respect by a fair preponderance of the evidence.

In disposition of a previous application by plaintiff in this court, one for a preliminary injunction, another Judge in refusing relief observed: "However, defendant does not use the name 'Art-Type' in connection with any goods. In fact, defendant does not sell plaintiff's product or any other product. Unlike plaintiff, he only provides services. He deals only in type-setting with varityper for offset printing by others. It is not sufficiently clear, on the record, that persons in the trade are likely to be confused and take the name of defendant's shop as a representation that he deals in services involving 'Artype'."[9]

■■ This characterization of the record is equally appropriate after trial.[10] And while it is true that a stronger prima facie case must be presented by an

2. Cf. Speaker v. Shaler Co., 7 Cir., 87 F.2d 985, 986, 987.

3. Wornova Mfg. Co. Inc. v. McCawley & Co., Inc., 2 Cir., 11 F.2d 465 ("Wornova"); Mirrolike Mfg. Co., Inc., v. Devoe & Raynolds Co., Inc., D.C.S.D.N.Y., 3 F.2d 846, affirmed, 2 Cir., 3 F.2d 847 ("Mirrolike"); Feil v. American Serum Co., D.C.N.D.Iowa, W.D., 6 F.2d 643 ("Wormix").

4. 3 Restatement, Torts § 721, comment *a* (1938). Cf. Douglas Laboratories Corp. v. Copper Tan, Inc., 2 Cir., 210 F.2d 453, 455, 456.

5. Standard Paint Co. v. Trinidad Asphalt Manufacturing Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536.

6. 3 Restatement, Torts § 716 (1938).

7. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L. Ed. 73.

8. 3 Restatement, Torts § 716, comment *b* (1938).

9. Artype, Inc. v. Zappulla, Civ. No. 63–338 (November 16, 1951).

10. 3 Restatement, Torts §§ 730, 731 (1938).

applicant seeking preliminary injunction in advance of trial than for similar relief after trial,[11] it cannot be asserted that plaintiff has sustained the requisite burden of proof that defendant's services or business is likely to be regarded by prospective purchasers as associated with the source identified by the name used by plaintiff.[12] In reaching this result, the triviality of defendant's interference with whatever interest plaintiff may have in its name should not be ignored.[13]

Accordingly, plaintiff's complaint must be dismissed.

Judgment accordingly.

---

11. Huber Baking Co. v. Stroehmann Bros., 2 Cir., 208 F.2d 464.

12. 3 Restatement, Torts § 731(b) (1938).

13. 2 Nims, Unfair Competition and Trademarks § 385, p. 1222 (4th Ed. 1947).